JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

TONY NUNLEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CARDINAL LOGISTICS MANAGEMENT CORPORATION, a North Carolina corporation; and ROBERT SHEERIN, an individual; and DOES 1 through 100, inclusive,

Defendants.

Case No.: ED CV 22-01255-FWS-SP

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT [13] AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [15]**

///

///

///

1    Before the court is Plaintiff Tony Nunley's ("Plaintiff") Motion to Remand this

2    Action to State Court.  (Dkt. 13 ("Motion" or "Mot.").)  Defendant Cardinal Logistics

3    Management Corporation ("Defendant") opposes the Motion.  (Dkt. 17 ("Opposition"

4    or "Opp.").)  Plaintiff filed a reply brief.  (Dkt. 18 ("Reply").)

5    The court finds this matter appropriate for resolution without oral argument.

6    *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and

7    determining motions on briefs, without oral hearings."); L. R. 7-15 (authorizing courts

8    to "dispense with oral argument on any motion except where an oral hearing is

9    required by statute").  Based on the state of the record, as applied to the applicable

10    law, the court **GRANTS** the Motion.

## I.    Relevant Background

12    In this putative class action, Plaintiff brings claims against Defendant and

13    Defendant Robert Sheerin (collectively, "Defendants") based on (1) violations of the

14    Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. §§ 1681b(b)(2)(A),

15    d(a)(1)(B), and m(a)(3), (Dkt. 1-1 "Complaint" or "Compl.") ¶¶ 26-33); (2) violations

16    of the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal.

17    Civ. Code §§ 1786, *et seq.*, (Compl. ¶¶ 34-46); and (3) violations of the California

18    Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1, *et

19    seq.*, (Compl. ¶¶ 47-55).  Plaintiff seeks to bring this action on behalf of "all current,

20    former, and prospective employees of Defendants who applied for a job with

21    Defendants and a background check was performed beginning five (5) years

22    preceding the filing of [the] [C]omplaint up until the date that final judgment is

23    entered in this action."  (*Id.* ¶ 16.)

Plaintiff alleges Defendants employed Plaintiff "with duties that included, but were not limited to, driving and delivering appliances."[1] (*Id.* ¶ 2.) Plaintiff "applied for work with Defendants" in or around February 2021 and stopped working for them in or around October 2021. (*Id.*) Plaintiff alleges Defendants purported to provide consumer report disclosures to Plaintiff, and requested Plaintiff's authorization to procure consumer reports and background checks for purposes of employment. (*Id.* ¶ 11.) Plaintiff also alleges that Defendants received consumer reports relating to Plaintiff in July 2019 and February 2020 as part of an employment background screening, but did not provide Plaintiff with the required disclosures or receive proper authorization to obtain the reports. (*Id.* ¶ 12.) Plaintiff alleges the disclosures Defendants provided were inadequate in that they included "superfluous" and "extraneous" information; were "bur[ied] . . . with small font in a lengthy employment package with dense text that contain[ed] extraneous information"; were not accompanied by a summary of Plaintiff's rights under 15 U.S.C. § 1681m(a)(3) or Cal. Civ. Code § 1786.22; and included a third-party liability waiver. (*Id.* ¶¶ 13-15, 31, 41.) Plaintiff further alleges Defendants did not obtain proper authorization before procuring consumer reports relating to him, did not provide adequate notice to Plaintiff of the source of the reports, and "routinely acquire consumer, investigative, and/or consumer credit reports . . . to conduct background checks." (*Id.* ¶¶ 13, 15, 31, 41, 52.) Plaintiff alleges that, "[a]s a result of Defendants' unlawful procurement of background reports by way of [their] inadequate disclosures and authorizations," Plaintiff has "been deprived of [his] consumer rights and prevented from making

---

[1] For the purposes of the Motion, the court assumes the Complaint's allegations are true. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("[C]ourts should apply the same liberal rules to removal allegations that are applied to other matters of pleading.") (cleaned up); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1184 (E.D. Cal. 2020) (accepting "the allegations as true for purposes of removal").

informed decisions about whether to permit Defendants to obtain [his] personal information."  (*Id.* ¶ 43.)  Plaintiff "seek[s] some of the statutory remedies" available under the FCRA, ICRAA, and CCRAA.  (*Id.* ¶¶ 33, 46, 55.)

Plaintiff initially filed this action in California Superior Court, San Bernardino County, on May 11, 2022, (*see* Compl.), and served Defendant on June 20, 2022, (Dkt. 1-2).  On July 19, 2022, Defendant timely removed the matter to this court, asserting federal jurisdiction is proper based on both federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction as amended by the Class Action Fairness Act of 2005 ("CAFA"), *id.* §§ 1332(d), 1453, 1711-15.  (*See* Dkt. 1 ("Notice of Removal" or "NOR") ¶ 7.)  Plaintiff then filed the Motion on August 18, 2022.  (Dkt. 13.)  The matter is fully briefed.  (*See* Mot.; Opp.; Reply.)

## II.   Legal Standards

### A.   Removal

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 28 U.S.C. § 1441(a).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the court must remand the case.  28 U.S.C. § 1447(c).  It is the removing party's burden to establish federal jurisdiction lies.  *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992-94 (9th Cir. 2022); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("[H]old[ing] that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."); *Pool v. F. Hoffman-La Roche, Ltd.*, 386 F. Supp. 3d 1202, 1209 (N.D. Cal. 2019) (stating "in a removal situation, the defendant has the burden of proving jurisdiction, and the burden of proof is preponderance of the evidence").  "[A]lthough a presumption against federal jurisdiction exists in the usual diversity case, 'no antiremoval presumption attends cases invoking CAFA.'"  *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772

(9th Cir. 2020) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014)).

### B.      Article III Standing

Article III standing requires: (1) a plaintiff to have "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "that the injury was likely caused by the defendant"; and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, --- U.S. ----, 141 S. Ct. 2190, 2203 (2021) (citation omitted).  "[T]he party invoking federal jurisdiction bears the burden of establishing these elements."  *See Spokeo, Inc. v. Robins* (*Spokeo II*), 578 U.S. 330, 338 (2016) (citation and internal punctuation marks omitted); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo II*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).  Though the "'fairly traceable' and 'redressability' components for standing overlap and are two facets of a single causation requirement" they "are distinct in that traceability examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested relief." *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (citations and some internal quotation marks omitted).

### C.      Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331." *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005).  "Under 28 U.S.C. § 1331, federal courts 'have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Negrete v. City of Oakland*, 46

F.4th 811, 816 (9th Cir. 2022).  To establish diversity jurisdiction, a plaintiff must demonstrate that: (1) the suit is between citizens of different states; and (2) the amount in controversy exceeds $75,000.  28 U.S.C. § 1332; *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000.").  In general, "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978).  But, absent limited exceptions, CAFA permits a federal district court to exercise subject matter jurisdiction over a putative class action in which: (1) the amount in controversy exceeds $5,000,000; (2) the number of members of all purported classes of plaintiffs totals 100 or more persons; and (3) any member of a proposed class of plaintiffs differs in citizenship from any defendant.  28 U.S.C. § 1332(d); *Dart Cherokee*, 574 U.S. at 84-85.

## III.    DISCUSSION

### A.    Article III Standing

Plaintiff argues this action should be remanded to state court because the Complaint's allegations do not sufficiently demonstrate more than a bare procedural violation of the FCRA, and thus does not set forth a concrete and particularized injury in fact required for Article III standing.  (*See* Mot. at 7-10; Reply at 2-8.)  Defendant argues this action should remain in federal court because the Complaint alleges: (1) violations of Plaintiff's substantive privacy rights; (2) a total lack of certain disclosures; (3) Plaintiff was "actually confused" and could not protect his legal rights; and (4) Plaintiff was deprived of his consumer rights, all of which support finding the Complaint demonstrates an injury in fact.  (*See* Opp. at 9-19.)

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo II*, 578 U.S. at 339.  A concrete injury is one that "actually exist[s]," *id.* at 340 (citation omitted), but the term "'[c]oncrete' is not, however,

necessarily synonymous with 'tangible,'" *id.*  Still, "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo II*, 578 U.S. at 341).  The Ninth Circuit "has adopted a two-step framework to determine whether alleged violations of FCRA provisions are sufficiently concrete to confer standing: '(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (alteration in original) (quoting *Robins v. Spokeo, Inc.* (*Spokeo III*), 867 F.3d 1108, 1113 (9th Cir. 2017)).

In this case, the court finds Plaintiff has not alleged a "concrete injury" necessary to confer Article III standing.  As discussed above, Plaintiff alleges: (1) disclosures provided by Defendants were inadequate in that they (a) included "superfluous" and "extraneous" information, and (b) were "bur[ied] . . . with small font in a lengthy employment package with dense text that contain[ed] extraneous information"; (2) the disclosures were not accompanied by a summary of Plaintiff's rights under 15 U.S.C. § 1681m(a)(3) or Cal. Civ. Code § 1786.22; (3) the disclosures included a third-party liability waiver; (4) Defendants did not obtain proper authorization before procuring consumer reports; (5) Defendants did not provide adequate notice to Plaintiff of the source of the reports, despite the fact that Defendants "routinely acquire consumer, investigative, and/or consumer credit reports . . . to conduct background checks"; and (6) that, "[a]s a result of Defendants' unlawful procurement of background reports by way of [their] inadequate disclosures and authorizations," Plaintiff has "been deprived of [his] consumer rights and prevented from making informed decisions about whether to permit Defendants to obtain [his] personal information."  (*Id.* ¶¶ 13-15, 31, 41, 43.)

1   The court finds the Complaint fails to demonstrate Plaintiff sustained a

2   "concrete harm" independent of asserted procedural violations because it does not

3   allege that plaintiff suffered any actual confusion resulting from the purportedly

4   noncompliant disclosures or that plaintiff would have taken any action if Defendants

5   had complied with the FCRA.  Numerous courts have found that alleged violations of

6   the FCRA's disclosure and/or authorization provisions are "bare procedural

7   violations" lacking a "concrete" injury in fact necessary to sustain Article III standing

8   when unaccompanied by allegations that a plaintiff was confused or would have acted

9   differently as a result of those violations.  *See, e.g.*, *Mendoza v. Aldi Inc.*, 2019 WL

10  7284940, at *2 (C.D. Cal. Dec. 27, 2019) (finding allegations "fail[ed] to reach

11  beyond a bare procedural violation of the FCRA and thus [did] not satisfy Article III

12  standing" where plaintiff did not allege "subsequent discovery, confusion from the

13  form, or that she would not have signed the authorization had it been presented in a

14  FCRA-compliant format"); *Mayorga v. Carter's Inc.*, 2022 WL 1190350, at *3 (C.D.

15  Cal. Apr. 21, 2022) (finding complaint was "devoid of any indication of concrete

16  harm" where it lacked allegations that plaintiff "was actually confused or deceived by

17  the 'extraneous information,' authorized the consumer report unknowingly, or would

18  not have authorized it had the disclosure been presented properly"); *Grabner v.

19  Experian Info. Sols., Inc.*, 2022 WL 1223636, at *2 (C.D. Cal. Apr. 22, 2022) (finding

20  allegations of "[d]efendant's failure to apprise them 'that States may enforce the

21  FCRA, that many states have their own consumer reporting laws, that the consumer

22  may have more rights under State law, and that the consumer may wish to contact a

23  State or local consumer protection agency or State attorney general for more

24  information'" insufficient to demonstrate Article III standing because plaintiffs "d[id]

25  not allege any concrete action [d]efendant's statutory violation prevented them from

26  taking" and the alleged omitted information "include[d] generalized statements

27  regarding the availability of legal aid and redress at the state level" which was "not the

28  type of information that would obviously spark action from its recipient and

1   [p]laintiffs [did] not allege that they had some need to contact state authorities that

2   [d]efendant's non-disclosure prevented or hindered them from fulfilling"); *Masuda v.*

3   *Lucile Salter Packard Children's Hosp. at Stanford*, 2021 WL 4305979, at \*3-\*4

4   (N.D. Cal. Sept. 22, 2021) (finding plaintiff's allegations did "not resemble the kind

5   which the Ninth Circuit has found confers Article III standing" where "[p]laintiff [did]

6   not allege that she was confused by the forms, that she later discovered that a

7   consumer report had been generated when she had not expected it, or that she suffered

8   any other harm from the noncompliant forms").

9        Defendant's arguments that Plaintiff's allegations state: (1) his "substantive"

10   privacy rights were violated; and (2) that certain disclosures were never provided to

11   him both are independently sufficient to confer Article III standing, without additional

12   allegations of concrete harm, are not persuasive.  (*See* Opp. at 11-16.)  As noted

13   above, the "two-step framework" employed by courts in the Ninth Circuit requires

14   both a showing that the provisions of the FCRA that were allegedly violated were

15   established to protect a plaintiff's concrete interests beyond their purely procedural

16   rights *and* that the specific procedural violations alleged by the plaintiff actually harm,

17   or present a material risk of harm to, those concrete interests.  *Tailford*, 26 F.4th at

18   1099; *Spokeo III*, 867 F.3d at 1113.  As set forth above, Plaintiff does not set forth

19   sufficient facts in the Complaint demonstrating a concrete harm beyond procedural

20   violations and formatting errors.  *See TransUnion*, 141 S. Ct. at 2214; *Spokeo II*, 578

21   U.S. at 341.

22        Defendant relies heavily on *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) and

23   its progeny to support its position, but these cases are distinguishable.  In *Syed*, the

24   Ninth Circuit "infer[red] that Syed was deprived of the right to information and the

25   right to privacy guaranteed by Section 1681b(b)(2)(A)(I)-(ii)" based on allegations

26   Syed "discovered Defendant M-I's violation(s) within the last two years when he

27   obtained and reviewed his personnel file from Defendant M-I and discovered that

28   Defendant M-I had procured and/or caused to be procured a 'consumer report'

1    regarding him for employment purposes based on the illegal disclosure and

2    authorization form" and thus "was confused by the inclusion of the liability waiver

3    with the disclosure and would not have signed it had it contained a sufficiently clear

4    disclosure, as required in the statute."  853 F.3d at 499-500.  Here, unlike in *Syed*,

5    Plaintiff "does not claim that he was confused, misled, or otherwise negatively

6    affected by the alleged statutory violations."  *Ellsworth v. Schneider Nat'l Carriers,*

7    *Inc.*, 2021 WL 6102514, at *4 (C.D. Cal. Oct. 28, 2021); *see Ruiz v. Shamrock Foods*

8    *Co.*, 804 F. App'x 657, 659 (9th Cir. 2020) ("We held that the plaintiff in *Syed* had

9    adequately alleged such an injury because we inferred that he 'was confused by the

10   inclusion of [a] liability waiver with the disclosure and would not have signed [the

11   authorization for the credit check] had it contained a sufficiently clear disclosure.'")

12   (alterations in original) (citation omitted).

13          Likewise, *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir.

14   2019) is distinguishable.  *Nayab* concerned § 1681(f)(1), a provision of the FCRA not

15   at issue in the Complaint.  942 F.3d at 496; *see Kelley v. Applus Techs.*, 2022 WL

16   2357294, at *3 (C.D. Cal. June 30, 2022) (reasoning *Nayab* "pertained to section

17   1681(f)(1), not b(b)(2)(A)" and did "not bear on the question of whether a violation of

18   FCRA's stand-alone disclosure requirement, section 1681b(b)(2)(A), confers

19   standing"); *accord Winters v. Douglas Emmett, Inc.*, 547 F. Supp. 3d 901, 906 (C.D.

20   Cal. 2021).  And, though Defendant does not cite it, so is *Tailford*.  In *Tailford*, the

21   plaintiffs alleged the defendant violated 15 U.S.C. § 1681g by, among other things,

22   not disclosing inquiries made to third parties and the identities of the third parties that

23   obtained the plaintiffs' information, preventing them from opting out of these

24   disclosures and harming their privacy interests.  *See* 26 F.4th at 1097, 1098-1101.

25   Again, the Complaint pleads no violation of § 1681g; and, importantly, does not set

26   forth facts indicating Plaintiff's information was shared with any third parties, or any

27   facts "'present[ing] a material risk of harm'" to Plaintiff's interest in his consumer

28   privacy.  *See id.* at 1100; *Muha v. Experian Info. Sols., Inc.*, 2022 WL 1223635, at *3

1   (C.D. Cal. Apr. 25, 2022) ("Unlike in *Tailford*, neither Plaintiff's right to privacy nor

2   her right to have her information accurately reported, which the Ninth Circuit

3   identified as the core purposes of the FCRA.") (citation omitted).[2]

4          Defendant also urges the court to follow *Syed* and find that the Complaint's

5   allegations sustain a "reasonable inference" that Plaintiff suffered a concrete injury.

6   (Opp. at 16-18.)  While Plaintiff alleges violations of § 1681b(b)(2)(A) similar to

7   those at issue in *Syed*, the Ninth Circuit in *Syed* held it could "fairly infer" that Syed

8   was not aware he was signing a waiver authorizing the credit check based on his late

9   discovery of the report and "was confused by the inclusion of the liability waiver with

10  the disclosure and would not have signed it had it contained a sufficiently clear

11

12  _____

13  [2] Defendant argues *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176
    (9th Cir. 2019); *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1088-91 & n.2 (9th Cir.

14  2020); and *Luna v. Hansen & Adkins Auto Transp., Inc.*, 956 F.3d 1151, 1153 (9th
    Cir. 2020) support its position, noting that the "Ninth Circuit has impliedly found

15  Article III standing" in the latter two cases "by exercising jurisdiction."  (Opp. at 12

16  n.1.)  The court disagrees.  As relevant to all three cases, "[a]n assumption is not a
    holding."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (quoting

17  *United States v. Booker*, 375 F.3d 508, 514 (7th Cir. 2004)).  The Ninth Circuit in

18  *Gilberg*, *Luna*, and *Fred Meyer* did not discuss Article III standing; each concerned
    the scope of the FCRA's standalone disclosure requirement.  *See Luna*, 956 F.3d at

19  1152-54 (analyzing whether providing a standalone FCRA disclosure

20  contemporaneously with other employment documents violates the FCRA's
    disclosure requirements); *Gilberg*, 913 F.3d at 1175-76 (delineating scope of the

21  FCRA's standalone disclosure requirement to include any extraneous and irrelevant

22  information); *Fred Meyer*, 953 F.3d at 1088-89 (holding that "beyond a plain
    statement disclosing 'that a consumer report may be obtained for employment

23  purposes,' some concise explanation of what that phrase means may be included as

24  part of the 'disclosure' required by § 1681b(b)(2)(A)(i)"); *see also Orpilla v.
    Schenker, Inc.*, 2020 WL 2395002, at *5 (N.D. Cal. May 12, 2020) (distinguishing

25  *Gilberg* and *Fred Meyer* on these bases); *id.* (observing "*Gilberg* is distinguishable for

26  one more reason" because "when the plaintiff in *Gilberg* filed her appeal to the Ninth
    Circuit, she expressly conceded that the district court had subject matter jurisdiction

27  over the case, and that the Ninth Circuit had jurisdiction over the appeal") (citation

28  and internal quotation marks omitted).

1   disclosure, as required in the statute." *Syed*, 853 F.3d at 499-500.  Contrary to

2   Defendant's argument, here, "Plaintiff has made no allegations of confusion, late

3   discovery of Defendant's violation of the FCRA, or any other allegation from which

4   the [c]ourt may infer that [he] was confused or that [he] would not have signed the

5   document if [he] had received clear disclosures." *See Orpilla v. Schenker, Inc.*, 2020

6   WL 2395002, at *4 (N.D. Cal. May 12, 2020) (distinguishing *Syed* on this basis);

7   *Williams v. Nichols Demos, Inc.*, 2018 WL 3046507, at *4 (N.D. Cal. June 20, 2018)

8   (collecting cases in which district courts found plaintiffs alleged bare procedural

9   violations of the FCRA insufficient to confer Article III standing where claims were

10  based on alleged violations of the statute's standalone disclosure requirement).

11  Defendant's attempts to support this inference with the FCRA's statutory period and

12  the Complaint's allegations that disclosures were "buried" or provided in an

13  improperly condensed format are too attenuated to militate finding otherwise.  (*See*

14  Opp. at 17.)  Stated differently, Defendant's argument that the Complaint's allegations

15  "impl[y] [Plaintiff] never saw the disclosures at the time of his application" and

16  "entail actual confusion," (Opp. at 17, 18), only "bolster [Plaintiff's] point: [Plaintiff]

17  does *not* allege such [facts]," *see Mendoza*, 2019 WL 7284940, at *2.  Additionally,

18  *Syed* was decided on a motion to dismiss, in which the court draws all reasonable

19  inferences in favor of the nonmoving party.  *See Syed*, 853 F.3d at 499.  Although "no

20  antiremoval presumption attends" the Motion, *see Dart Cherokee*, 574 U.S. at 87, it is

21  still Defendant's burden to establish the propriety of removal jurisdiction, *see*

22  *Jauregui*, 28 F.4th at 992-94; *Abrego Abrego*, 443 F.3d at 685.  Based on the state of

23  the record, as applied to the applicable law, the court concludes Defendant has not met

24  its burden.

25      Finally, Defendant seizes upon the Complaint's allegations that Plaintiff has

26  "been deprived of [his] consumer rights and prevented from making informed

27  decisions about whether to permit Defendants to obtain [his] personal information," to

28  argue this sentence alone is sufficient to demonstrate Article III standing.  (*See* Opp. at

18-19.)  But, as relevant here, "a reference to invaded 'privacy and statutory rights,' an unexplained reference to 'lost money or property,' and [even] a request for 'restitution' – are insufficient to describe a concrete and particularized harm."  *See Moore v. United Parcel Serv., Inc.*, 2019 WL 2172706, at *1 (N.D. Cal. May 13, 2019).  Further, to construe the allegation that Defendants prevented Plaintiff from "making informed decisions about whether to permit Defendants to obtain [his] personal information" as an allegation of actual confusion resulting from Defendant's purported FCRA violations, is temporally implausible.  The plain reading of this allegation is that Plaintiff was "prevented" from making an "informed decision about whether to permit Defendants" to obtain a credit report because Defendants obtained the report without first obtaining his authorization.  After Defendants obtained the report, there was no "informed decision" that they could "prevent" or confound: as alleged, Defendants had already divested Plaintiff of his ability to provide adequate consent.  Accordingly, alleging Plaintiff was "prevented from making informed decisions about whether to permit Defendants to obtain [his] personal information" is merely another way of asserting Defendants simply obtained a credit report relating to Plaintiff without his prior authorization, and fails to demonstrate a concrete injury for the same reasons discussed above.

In sum, the crux of the Complaint is that Defendants did not comply with the technical authorization and disclosure requirements of the FCRA.  This is the kind of "bare procedural injury" of the FCRA contemplated by *TransUnion* and *Spokeo II*.  *See Spokeo II*, 578 U.S. 330, 341 (2016) ("bare procedural violation[s], divorced from any concrete harm" are insufficient to "satisfy the injury-in-fact requirement of Article III"); *TransUnion*, 141 S. Ct. at 2214 (holding allegations were insufficient to confer Article III standing where "plaintiffs did not allege that they failed to receive any required information" but "argued only that they received it *in the wrong format*").  The Complaint does not allege, nor fairly permit the inference that, Plaintiff would have taken any action, or avoided any nonspeculative harm, if Defendant had

1  complied with the FCRA's requirements.  Accordingly, it does not demonstrate

2  Article III standing, and the court must remand this action.  *See Orpilla*, 2020 WL

3  2395002, at *4-*6 (N.D. Cal. May 12, 2020) (finding employer's alleged

4  noncompliance with FCRA's disclosure and authorization requirements were "mere

5  procedural violation[s]" because plaintiff did not allege she was unaware of the

6  noncompliance or she would have acted differently and remanding case to state court

7  for lack of Article III standing); *Grabner*, 2022 WL 1223636, at *3 (remanding action

8  to state court for lack of Article III standing because court could not, "without

9  speculating, discern from Plaintiffs' complaint any action they would have taken or

10  harm they would have avoided" if defendant had complied with the FCRA's

11  disclosure requirements).

12      Accordingly, the court finds the Complaint does not adequately plead a

13  "concrete" injury in fact for purposes of Article III standing.

14      **B.      Subject Matter Jurisdiction**

15      The parties devote some of their attention to arguments regarding the court's

16  subject matter jurisdiction apart from Article III standing.  Plaintiff argues that, even if

17  Plaintiff has Article III standing, Defendant is unable to establish subject matter

18  jurisdiction under CAFA, because Defendant's calculations of the amount in

19  controversy in this action are flawed.  (*See* Mot. at 10-12.)  Plaintiff also contends

20  Defendant's argument in the Notice of Removal that Defendant Robert Sheerin was

21  fraudulently joined to destroy diversity jurisdiction is irrelevant for purposes of CAFA

22  jurisdiction, which requires only minimal diversity.  (*See id.* at 12-13; NOR ¶ 18.)

23  Defendant disputes Plaintiff's assertions on their merits, and also notes that the court

24  has federal question jurisdiction over this matter because the Complaint pleads

25  violations of the Fair Credit Reporting Act, a federal statute.  (*See* Opp. at 19-30.)  In

26  Reply, Plaintiff does not substantively address Defendant's assertion that federal

27  question jurisdiction exists.  (*See* Reply at 8-10.)

28

1         Because the Complaint alleges Defendants violated a federal law—the FCRA—

2   the court would ordinarily find it has subject matter jurisdiction arising under federal

3   question jurisdiction, based on the purported violations of the FCRA pleaded in the

4   Complaint.  28 U.S.C. §§ 1331; 1441; *see* 28 USC § 1367(a) (absent certain

5   exceptions, "in any civil action of which the district courts have original jurisdiction,

6   the district courts shall have supplemental jurisdiction over all other claims that are so

7   related to claims in the action within such original jurisdiction that they form part of

8   the same case or controversy under Article III of the United States Constitution").  But

9   Plaintiff lacks Article III standing, and therefore, the court lacks subject matter

10  jurisdiction over this matter regardless.[3]  *See, e.g.*, *Polo v. Innoventions Int'l, LLC*,

11  833 F.3d 1193, 1196 (9th Cir. 2016) ("The rule that a removed case in which the

12  plaintiff lacks Article III standing must be remanded to state court under [28 U.S.C.]

13  § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of

14  removed case.").

15  ///

16  ///

17  ///

18

19

20

21  _____

22  [3] Plaintiff raises evidentiary challenges to Defendant's calculations of the asserted

23  amount in controversy based on two paragraphs in the Declaration of Defendant's
    Vice President of Human Resources, Holly Hardie, submitted in support of the

24  Motion.  (*Compare* Dkt. 17-1 *with* Dkt. 18-1; *see also* Dkt. 19-1 (Defendant's
    Response).)  Because addressing the parties' arguments regarding Defendant's

25  computation of the amount in controversy is unnecessary given Plaintiff's lack of

26  Article III standing—much less the apparent existence of federal question jurisdiction

27  under 28 U.S.C. § 1331—the court need not consider the challenged evidence
    presented in the Hardie Declaration, (Dkt. 17-1), and accordingly **DENIES AS**

28  **MOOT** Plaintiff's evidentiary objections thereto, (Dkt. 18-1).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.   DISPOSITION**

For the foregoing reasons, the court **GRANTS** the Motion.  Defendant's Motion to Dismiss set for hearing on November 3, 2022, at 10:00 a.m., (Dkt. 15), is **DENIED AS MOOT** and the case is **REMANDED** to California Superior Court, San Bernardino County.

**IT IS SO ORDERED.**

DATED: October 5, 2022

_____
Hon. Fred W. Slaughter
UNITED STATES DISTRICT JUDGE